NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ─────────────────────── : | |
| NEW JERSEY PROTECTION AND : | |
| ADVOCACY, INC., : | |
| : | |
| Plaintiff, : | Civil No. 08-1858 (AET) |
| : | |
| v. : | **MEMORANDUM AND ORDER** |
| : | |
| JENNIFER VELEZ, in her official : | |
| capacity as Commissioner of the : | |
| New Jersey Department of : | |
| Human Services, : | |
| : | |
| Defendant. : | |
| ─────────────────────── : | |

THOMPSON, U.S.D.J.

INTRODUCTION

This matter comes before the Court upon Defendant's Motion to Dismiss [20], filed pursuant to Fed. R. Civ. P. 12 (b)(1) and Fed. R. Civ. P. 12(b)(6). The Court has decided the motion based upon the submissions of the parties, without oral argument, pursuant to Fed. R. Civ. P. 78. For the reasons stated below, Defendant's motion is denied.

BACKGROUND

A.    Factual Background

Plaintiff New Jersey Protection & Advocacy ("NJP&A") is a federally-funded non-profit corporation, designated by the State of New Jersey ("State"), to serve as the State's protection and advocacy system for the disabled. Defendant Jennifer Velez is sued in her official capacity as the Commissioner of the New Jersey Department of Human Services ("DHS"). Plaintiff

1

brings this suit as an associational plaintiff on behalf of qualifying disabled individuals who allege that the DHS neglected its statutory obligations under Title II of the Americans with Disabilities Act ("Title II" or "ADA"), as well as Section 504 of the Rehabilitation Act ("Section 504").

Plaintiff contends that New Jersey participates in a federally-funded home and community-based waiver program whereupon the State receives Medicaid reimbursement for services provided to disabled individuals living within the community, as opposed to those placed in development centers (i.e., institutions). Plaintiff alleges that many of the individuals who have not had their cases handled get placed on a waiting-list. Plaintiff contends that these individuals usually have development disabilities such as mental retardation, autism, cerebral palsy, and other traumatic brain injuries. NJP&A contends it brings this suit on behalf of individuals who reside in the community but who are in danger of being unnecessarily institutionalized in one of the State's seven, large, congregate facilities (known as "development centers"), and who wish to reside in more integrated settings in the community.

Plaintiff contends that a requirement of participating in Title II is that the State must provide requested services to individuals with reasonable promptness. Plaintiff alleges DHS has failed to act in the manner that Title II requires. Specifically, Plaintiff alleges that more than 8,000 individuals have had their requests for community-based services indefinitely wait-listed. This, Plaintiff contends, violates Title II and Section 504.

In lieu of an Answer, Defendant filed the instant motion. For the purposes of the instant motion, Defendant accepts the facts outlined in the Amended Complaint but not the legal conclusions. For its part, Defendant contends Plaintiff's Complaint should be dismissed because

2

Plaintiff does not have standing to assert claims on behalf of its constituents.  Furthermore,

Defendant maintains that, irrespective of any standing arguments, the suit is constitutionally

barred because Congress failed to abrogate the State's Eleventh Amendment sovereign immunity

and that the State did not waive its sovereign immunity by accepting federal monies under

Section 504.

B.     Procedural Background

On April 16, 2008, NJP&A filed the instant suit [1].  On September 9, 2008, the Court

granted Defendant's Motion for a More Definite Statement [15], and to strike portions of the

Complaint.  On September 26, 2008, Plaintiff filed a First Amended Complaint [16].  On

December 31, 2008, Defendant filed the instant motion [20].

On February 23, 2009, pursuant to Local Civil Rule 24.1(a) and 28 U.S.C. § 2403(a),

Defendant notified the Court [25] that the instant motion questions the constitutionality of two

acts of Congress.  On March 10, 2009, the Court issued an Order [30] certifying to the Attorney

General of the United States a challenge to the constitutionality of two Congressional acts.  On

May 28, 2009, the United States ("the government" or "Intervenor") submitted a Notice of

Intervention [35], and later a brief [36] in support of intervention.

                                   DISCUSSION

A.     Standing

Defendant files the Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).  However, since

Defendant's standing argument implicates the Court's subject matter jurisdiction over this case,

the Court will construe that portion of Defendant's motion discussing standing as being brought

pursuant to Fed. R. Civ. P. 12(b)(1).  Defendant alleges this Court lacks subject matter

jurisdiction because Plaintiff does not have standing to bring the suit, and therefore dismissal is

appropriate.  Plaintiff contends that it has associational standing because it brings this suit on

behalf of certain disabled individuals, for whom NJP&A advocates.

In order to establish associational standing, a Plaintiff must demonstrate: "(1) its

members would otherwise have standing to sue in their own right; (2) the interests it seeks to

protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief

requested requires the participation of individual members in the lawsuit." Hunt v. Washington

State Apple Advertising Com'n, 432 U.S. 333, 343 (1977).

Here, Plaintiff meets the first element of the Court's associational standing analysis

because its members have standing to sue in their own right.  Id.  In order to have standing under

Article III of the Constitution, (1) the plaintiff must have suffered an injury in fact–an invasion of

a legally protected interest which is concrete and particularized; and actual or imminent; (2) there

must be a causal connection between the injury and the conduct complained of; and (3) it must be

likely that the injury will be redressed by a favorable decision.   Lujan v. Defenders of Wildlife,

504 U.S. 555, 560-61 (1992).

Here, NJP&A's constituents could sue in their own right.  Their injury is premised on the

denial of social services otherwise due to constituents.  Furthermore, because the DHS is

responsible for the placement of certain NJP&A's constituents, there appears a causal connection

between the injury and conduct complained of.  And, lastly, should the individual constituents

receive a favorable decision in this Court, their injury would likely be redressed, thereby

satisfying the final element of the Lujan standing analysis.  Id.  Therefore, because the Court

concludes members of NJP&A have fulfilled the three-pronged Lujan test, and could sue in their

own right, they have satisfied step one of the associational standing framework outlined in Hunt.

The second step of the Court's associational standing analysis requires that the interests an association seeks to protect are germane to the association's interests.  Hunt, 432 U.S. at 343. Plaintiff, here, also meets that step.  NJP&A is an organization formed to serve individuals with certain disabilities, some of whom suffer from serious injuries.  NJP&A brings this suit to effectuate better care and service within the State's DHS on behalf of those individuals.  These interests are germane to the interests of the NJP&A.  Therefore, it appears to the Court that NJP&A meets the second step of the Hunt associational standing framework.

The final step of the associational standing analysis necessitates an analysis of whether the relief sought requires the participation of individual members of the group.  Id.  The Supreme Court has explained that, "in a proper case, where the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured."  Id.  Here, Plaintiff seeks injunctive and declaratory relief, the results of which are intended to produce better care for certain NJP&A constituents.  The Court is satisfied that this relief will inure to the benefit of Plaintiff's constituents.  Therefore, it meets this third step of the Hunt associational standing analysis.  The Court therefore concludes Plaintiff has associational standing to bring this suit and that portion of Defendant's motion premised on subject matter jurisdiction is denied.

B.     Sovereign Immunity

Defendant avers that, irrespective of Plaintiff's allegations, the State enjoys sovereign immunity and therefore cannot be sued.  Both Plaintiff and Intervenor contend that the instant suit falls within the *Ex parte Young* exception, and that the suit should proceed.  Plaintiff further

contends that, should the Court choose not to accept its *Ex parte Young* argument, the State is still liable for alleged violations of Title II and Section 504 because either Congress abrogated the State's sovereign immunity, or the State waived immunity when it accepted federal funds for use within the State's DHS.

The Supreme Court has explained that, under *Ex parte Young*, individual state officers can be sued in their [official] capacities for injunctive and declaratory relief to end continuing or ongoing violations of federal law.  Verizon Md., Inc. v. Comm'n of Md., 535 U.S. 635, 645 (2002).  In other words, to determine the applicability of an *Ex parte Young* bar to Eleventh Amendment sovereign immunity, "a court need only conduct a straightforward inquiry into whether a complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  Id.

In this case, Plaintiff seeks injunctive and declaratory relief for alleged violations of Title II and Section 504.  Plaintiff contends NJP&A's constituents are not treated with reasonable promptness, in contravention of federal law.  This relief meets the Court's straightforward inquiry test articulated in Verizon.  Id.  It may be true that, ultimately, NJP&A will be unable to meet its burden of persuasion.  But at this phase of the proceedings, the Court need not address the merits of Plaintiff's case.  For the purposes of surviving that portion of Defendant's motion brought pursuant to Fed. R. Civ. P. 12(b)(6), it appears that Plaintiff has met its burden.

Because Plaintiff brings this suit alleging an ongoing violation of federal law, and because the relief sought is injunctive and prospective in nature, the Court concludes Defendant's Eleventh Amendment arguments do not override *Ex parte Young* considerations.  Accordingly, Plaintiff's suit seeking prospective, injunctive relief, alleging violations of Title II and Section

504 may proceed, and Defendant's motion to dismiss is denied.

CONCLUSION

For the reasons given above, and for good cause shown,

It is on this 20th day of July 2009,

ORDERED that Defendant Jennifer Velez's Motion to Dismiss [20] is DENIED.


s/ Anne E. Thompson
_____
ANNE E. THOMPSON, U.S.D.J.