## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DISABILITY RIGHTS NEW JERSEY, INC., <br><br> Plaintiff, <br><br> v. <br><br> JENNIFER VELEZ, in her official capacity as Commissioner of the Department Human Services for the State of New Jersey, <br><br> Defendant. | **SETTLEMENT AGREEMENT** <br><br> Case No.   3:08-cv-01858   (AET) (LHG) |
| DISABILITY RIGHTS NEW JERSEY, INC., ALLISON HARMON, by and through her guardian Valerie Harmon, FREDRENA THOMPSON, and JONATHAN STEVENS, <br><br> Plaintiffs, <br><br> v. <br><br> JENNIFER VELEZ, in her official capacity as Commissioner of the Department Human Services for the State of New Jersey, and the STATE OF NEW JERSEY, <br><br> Defendants. | Case No.   3:05-cv-04723   (AET) (TJB) |

**DISABILITY RIGHTS NEW JERSEY, INC.**
William Emmett Dwyer, Esq.
210 South Broad Street, 3rd Floor
Trenton, New Jersey 08608
(609) 292-9742
*Attorneys for Plaintiffs Disability Rights New Jersey, Inc.,*
*Allison Harmon, by and through her guardian Valerie Harmon,*
*Fredrena Thompson, and Jonathan Stevens*

**LOWENSTEIN SANDLER LLP**
R. Scott Thompson
Bernard J. Cooney
65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500
*Attorneys for Plaintiff Disability Rights New Jersey, Inc.*
(as to Civil Action No. 08-cv-1858 (AET) (LHG))

**PEPPER HAMILTON LLP**
Angelo A. Stio III
William Gibson
Suite 400
301 Carnegie Center
Princeton, NJ 08543-5276
(609) 452-0808
*Attorneys for Plaintiffs Disability Rights New Jersey, Inc.,*
*Allison Harmon, by and through her guardian Valerie Harmon,*
*Fredrena Thompson, and Jonathan Stevens*
(as to Civil Action No. 05-CV-4723 (AET) (TJB))

**RIKER DANZIG SCHERER HYLAND**
     **& PERRETTI LLP**
Brenda C. Liss
Lance J. Kalik
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962
(973) 451-8599
*Attorneys for Defendants Jennifer Velez and*
*the State of New Jersey*

**OFFICE OF THE NEW JERSEY ATTORNEY GENERAL**
**DIVISION OF LAW**
Gerard Andrew Hughes
25 Market Street, P.O. Box 112
Trenton, NJ 08625-0112
(609) 341-5096
*Attorneys for Defendants Jennifer Velez and*
*the State of New Jersey*

## SETTLEMENT AGREEMENT

WHEREAS Disability Rights New Jersey, Inc. ("DRNJ"), Allison Harmon, Fredrena Thompson, Reginald Brown and Jonathan Stevens (collectively "Plaintiffs") brought suit in the United States District Court, District of New Jersey, against the State of New Jersey and Jennifer Velez in her official capacity as Commissioner of Human Services for the State of New Jersey (collectively "Defendants") in the matter captioned *Disability Rights New Jersey, Inc. et al, Plaintiffs, v. Jennifer Velez et al., Defendants*, Docket No. 3-05-CV-04723 (AET) ("*DRNJ II*"); and, in addition, DRNJ brought suit in the United States District Court, District of New Jersey, against Jennifer Velez in her official capacity as Commissioner of Human Services for the State of New Jersey in the matter captioned *Disability Rights New Jersey, Inc., Plaintiff, v. Jennifer Velez, Defendant*, Docket No. 3-08-CV-01858 (AET) ("*DRNJ III*"); and

WHEREAS Plaintiffs and Defendants (collectively, the "Parties"), through negotiations, have determined to resolve both *DRNJ II* and *DRNJ III* (together, "the Actions") in accordance with the terms set forth in this Settlement Agreement ("Agreement"); and

NOW, THEREFORE, in consideration of the mutual covenants contained herein, the Parties agree as follows:

1.     No Admission of Liability. Nothing in this Agreement shall be construed as an acknowledgment, admission, concession, or evidence of liability of any Party regarding any of the claims made in either of the Actions, including claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504"); the Medicaid Act, 42 U.S.C. §

1396 *et seq.*, the federal or State Constitutions, or federal or State law, regulations, rules, or policies; and this Agreement may not be used as evidence of liability in the Actions or any other civil or criminal proceeding.

2.    Dismissal. Pursuant to Fed. R. Civ. P. 41(a), the Parties will file this Agreement, together with a Notice of Dismissal with Prejudice of each of the Actions. The Parties each shall take any and all action necessary to obtain such dismissals with prejudice. Notwithstanding the foregoing, in the event any Party asserts that another has breached any provision of this Agreement, the dismissal provisions of this paragraph shall not prohibit that Party from filing a motion in the United States District Court in accordance with paragraph 14 (Remedies for Breach).

3.    Effective Date. The Effective Date of this Agreement ("Effective Date") shall be the date it is filed with the United States District Court, and, unless otherwise specified, all time periods contained in this Agreement shall commence on that date.

4.    Substantial Compliance. Defendants shall substantially comply with all of the requirements of this Agreement. Substantial compliance shall mean that Defendants are complying with the material requirements of this Agreement.  Isolated or insignificant instances of non-compliance shall not preclude a finding of substantial compliance. For purposes of this paragraph, provision of at least 90 percent of the number of community placements for each year set forth in paragraph 5A shall constitute substantial compliance.

5.    Community Placements.  This Agreement contains Defendants' targets and time frames for placement of all Community Placement-Eligible individuals residing in State-operated developmental centers ("Developmental Centers") into community-based

settings appropriate to their needs.  The targets and time frames in this Agreement will supersede those set forth in the State's *Olmstead* Plan, "Path to Progress" dated May 2007 and the Addendum to the State's *Olmstead* Plan, "Blueprint for the June 30, 2013 Closure of Vineland Developmental Center" dated May 2011. Collectively, the "Path to Progress," as it from time to time may be amended, and this Agreement shall constitute the State of New Jersey's *Olmstead* Plan. Subject to appropriation of funding by the New Jersey State Legislature and availability of funds, the plan shall include the following elements:

A. <u>Schedule of Placements</u>. Defendants shall provide community placements for at least 600 Community Placement-Eligible individuals residing in Developmental Centers between FY2013 and FY2017, in accordance with the following schedule:

- Between July 1, 2012 and June 30, 2013: 90

- By June 30, 2014: cumulative total equivalent to 205 + (the number of new admissions of Community Placement-Eligible individuals in FY2013, not to exceed 35) [For example, if 115 community placements and 19 admissions occur in FY2013, DDD will provide 134 (115+19=134) community placements in FY2014.]

- By June 30, 2015: cumulative total equivalent to 320 + (the number of new admissions of Community Placement-Eligible individuals in FY2014, not to exceed 35)

- By June 30, 2016: cumulative total equivalent to 435 + (the number of new admissions of Community Placement-Eligible individuals in FY2015, not to exceed 35)

- By June 30, 2017: cumulative total equivalent to 600 + (the number of new admissions of Community Placement-Eligible individuals in FY2016, not to exceed 35)

(1)  The term "Cumulative Total" in this paragraph shall mean the total number of placements from July 1, 2012 to June 30 of each year.  Thus, in each year after

3

FY2013, the stated number (230, 345, 460, 600) shall be inclusive of – not in addition to – the number from previous years.

(2)  In each year after FY2013, a "credit" shall be applied for any number of community placements made in previous year(s) over the specified minimum.  For example, if 120 community placements were made in FY2013, in calculating FY2014, the annual number will be 110, reflecting a credit of 5 (115-5 = 110), plus any additional amount for new admissions.

(3)  If, on July 1 of any year, the number of Community Placement-Eligible individuals, as defined in paragraph 5.D(1) below, residing in Developmental Centers is not large enough for Defendants to achieve the applicable cumulative total stated in this paragraph, Defendants' obligation for that year will be limited to the actual number of Community Placement-Eligible individuals residing in Developmental Centers on that date.

B.  Currently Eligible Individuals.

(1)   "Currently Eligible Individuals" refers to those residents of Developmental Centers who are determined to be Community Placement-Eligible as of the Effective Date.  Defendants represent, and Plaintiffs accept, that presently there are fewer than 600 individuals in this category.

(2)  It is Defendants' intent to place all Currently Eligible Individuals by the end of FY2017.  However, if during the term of the agreement, closure of one or more developmental centers occurs, the Division of Developmental Disabilities ("DDD" or the "Division") may reprioritize the placement of Currently Eligible Individuals in accordance with the immediate needs of the Division.  In such event, all Currently

4

Eligible Individuals shall be placed in community settings by the end of FY2019 in accordance with the new *Olmstead* plan referenced in paragraph 5.C(2), which shall not, however, extend this Agreement beyond FY 2017.

C. <u>Individuals Other Than Currently Eligible Individuals</u>. Defendants shall not be required to place more than 35 individuals, other than those who are Currently Eligible Individuals, in any given year through FY2017, per the schedule set forth in paragraph 5A above. Subject to that limitation, Community Placement-Eligible individuals other than Currently Eligible Individuals (*i.e.,* individuals determined to be Community Placement-Eligible after the Effective Date) shall be placed in community settings within the following timeframes:

(1)   Individuals who become Community Placement-Eligible between the Effective Date and June 30, 2015, and who do not subsequently become ineligible (up to the maximum 35 per year), shall be placed in community settings by June 30, 2017; and

(2)   Individuals who become Community Placement-Eligible between July 1, 2015 and June 30, 2017, who do not subsequently become ineligible (up to the maximum 35 per year), and who are not placed in community settings by the end of FY2017, shall be placed in community settings in accordance with the schedule set forth in a new or amended *Olmstead* plan to be issued no later than December 31, 2016.

D.   <u>Eligibility for Community-based Placement ("Community Placement-Eligible")</u>

(1)   An individual is eligible for community-based placement under this Agreement ("Community Placement-Eligible") when the individual's Treatment

Professionals have determined that community placement is appropriate and the individual, or the individual's guardian if applicable, does not oppose community placement. If an individual wants a community placement and the individual's guardian opposes it, DRNJ shall be so informed so that it may investigate and take steps it deems appropriate. Additionally, if an individual or the individual's guardian wants a community placement and the Treatment Professionals oppose it, DRNJ shall be so informed.   As used in this paragraph, "Treatment Professionals" means those professionals who are members of the Interdisciplinary Team responsible for developing the individual's Individual Habitation Plan, and may include, but shall not be limited to, persons in the following professions and/or practice areas: nurse, dietician, habilitation plan coordinator, speech therapist, psychologist, physician, physical therapist, occupational therapist, and psychiatrist.   Community Placement-Eligible individuals shall not include individuals in the Moderate Security Unit (see N.J.S.A. 30:4-25.13 et seq.), or individuals otherwise admitted to a developmental center by court order.

(2)   In the event Defendants assign a Support Coordinator or Transitional Case Manager to identify an individual's needs with respect to community-based services and to develop a placement that meets the individual's identified needs, and Defendants offer the individual an appropriate community placement in accordance with this Agreement and the individual or the individual's guardian refuses the placement, Defendants shall be considered to have satisfied the requirements of this Agreement with respect to that individual, and the offer of appropriate placement shall count toward the Defendants' obligation set forth in paragraphs 5A, B and C above.

DRNJ will be informed of any such case. Individuals may challenge the appropriateness of any placement offer through the administrative procedures provided at N.J.A.C. 10:48-1-1.1 et seq.

    E. <u>Education Regarding Community-based Placement</u>. Defendants shall provide for appropriate education regarding community-based placement options to Developmental Center residents, their guardians where applicable, and family members where appropriate.

6.   <u>Diversion</u>. The Division will designate staff to be responsible for obtaining community placements and services for individuals who are being considered for admission to Developmental Centers. The designated staff will report and make recommendations directly to the Assistant Commissioner for DDD ("Assistant Commissioner").

7. <u>Pre-Admission Review</u>.

    A. <u>Independent Admissions Review Officer</u>. Beginning six months after the Effective Date, no individual will be admitted to a Developmental Center unless a Pre-admission Review has been conducted by an Independent Admissions Review Officer ("IARO"). The Commissioner shall designate the Office of the Ombudsman for Institutionalized Elderly ("Ombudsman") to serve as the IARO; however, in the event that the Ombudsman is or becomes unable or unwilling to serve in this capacity, the Commissioner, after consulting with DRNJ's Director, shall designate another individual with relevant experience to do so, provided that such individual shall not be a DHS employee.

(1)   Each individual to be admitted to a Developmental Center, and/or the individual's guardian, will be advised that representation by a DRNJ attorney may be available for the Pre-Admission Review.   DRNJ will review any request for legal assistance made by a guardian or an individual regarding the individual's admission to a Developmental Center and will make a determination whether DRNJ will provide representation to the individual during the Pre-Admission review.   Should DRNJ determine to provide representation to the individual, DRNJ shall select and appoint an attorney who will advocate for the expressed preference of the individual and/or his/her guardian.   The Division will provide notice of the Pre-Admission Review to DRNJ whenever the Assistant Commissioner decides that an individual will be admitted to a Developmental Center.

(2)   The IARO will make all reasonable efforts to hold in-person hearings to review admissions.

(3)   The purpose of Pre-Admission Review will be to determine whether all reasonable and appropriate alternatives have been attempted and exhausted prior to admission.

(4)   The Pre-Admission Review will be completed prior to admission, except that in circumstances resulting in a need for immediate placement, the Review may be convened within one week after the individual's admission.

(5)   If, after conducting a Pre-Admission Review, the IARO does not agree with the individual's admission, the individual will not be admitted to a Developmental Center unless the Assistant Commissioner determines that the admission is necessary for the Individual's health, safety and welfare ("Assistant Commissioner's Waiver").

8

Within seven days of any such admission, the Assistant Commissioner will provide the IARO and the individual's attorney/advocate 1) the reason that admission is necessary for the individual's health, safety and welfare; 2) a description of the community support(s) necessary to serve the individual in the community; and 3) a description of all efforts made to find community placement for that individual.

(6) Notwithstanding the foregoing or any other provision of this Agreement, in the event of circumstances indicating a need for immediate placement, the Assistant Commissioner shall have full authority to admit an individual to a Developmental Center and take any other action deemed appropriate in the Assistant Commissioner's discretion.

(7) Based on information obtained in the Pre-Admission Review process, the IARO may identify any significant gaps in the community service delivery system and make recommendations to the Assistant Commissioner for filling those gaps.

B. <u>Interim Procedures</u>.  During the six-month period before implementation of the IARO, all proposed admissions to a Developmental Center shall be reviewed in advance by the Developmental Center Admissions Review Panel (ARP) and the Assistant Commissioner.  In the event of circumstances indicating a need for immediate placement, such review will be performed within seven business days after the admission.

8.  <u>Post-Admission Procedures</u>

A.  Except for court ordered admissions as noted above, the Division will designate staff to be responsible for monitoring and oversight of discharge planning for all individuals admitted to Developmental Centers after the Effective Date, and for

9

ensuring that such individuals are discharged to the community in conformance with their discharge plans, subject to review by the Assistant Commissioner, when they qualify as Community Placement Eligible.

B.   The Division will promptly inform any admitted individual and the individual's attorney/advocate of the right to appeal the admission decision pursuant to available administrative appeal procedures (NJAC 10:48-1.1 et seq.), or by petition for a writ of *habeas corpus* to a court of competent jurisdiction.  The individual or his/her guardian shall be advised that representation by a DRNJ attorney may be available for any such appeal. Individuals who dispute the appropriateness of their admission to a Developmental Center shall be informed of the availability of DRNJ counsel.

C.   For every person admitted to a Developmental Center on or after the Effective Date who is determined at the time of admission to be Community Placement-Eligible:

(1) Within one year of admission, the Division will establish a plan for discharge of the individual within the time frames of paragraphs 5.C.(1) and 5.C.(2), which shall include a timeline for the development of needed services; and the Division will make a good-faith effort to implement each such plan;

(2) The Division will provide a copy of the discharge plan to DRNJ; and

(3) DRNJ will monitor the individual's progress toward discharge.

D.   All individuals admitted to Developmental Centers on or after the Effective Date shall be informed no less than annually of their right to appeal their continued placement in the Developmental Center pursuant to available administrative appeal procedures (N.J.A.C. 10:48-1.1 et seq.), or by petition for a writ of *habeas*

*corpus* to a court of competent jurisdiction. Upon request to the Assistant Commissioner, any individual or his/her guardian who files an appeal shall be advised that representation by a DRNJ attorney may be available for any such appeal.

9.    Preference for Placement in Development Center.  Nothing in paragraphs 7 or 8 above, except for paragraph 8.D, shall apply to an Individual who, either directly or through his or her guardian, has chosen or expressed a preference for placement in a Developmental Center over placement in a community-based setting, as permitted by law.   However, if an individual wants a community placement and the individual's guardian opposes such placement, DRNJ shall be so informed so that it may investigate and take steps it deems appropriate.   Nor shall anything in paragraphs 7 or 8 above, except for paragraph 8.D, apply to individuals in the Moderate Security Unit or under an court order of commitment from a criminal court.

10.    Funding.   Consistent with *Olmstead* principles, Defendant Velez (the "Commissioner") acknowledges the need to continue to develop community resources identified as necessary to divert individuals from emergency admissions to Developmental Centers and toward community-based settings where appropriate.

A. In each year of the settlement (through FY2017), the Commissioner will seek, as one of the top priorities of the Department of Human Services ("Department" or "DHS"), as part of the annual budget recommendations, an amount sufficient to meet the community placement targets and time frames set forth in paragraph 5 above.

B. The Commissioner will seek an increase in funding for community-based emergency capacity placements and other community-based services, as appropriate, for individuals eligible for DDD services.

C.   Upon receipt of CMS approval, within a reasonable period of time thereafter, DHS will implement a new Supports Program under the Comprehensive Medicaid Waiver, designed to expand community-based services as alternatives to institutional placements.  The Supports Program will be open to Medicaid-eligible adult DDD clients (including individuals currently on the Waiting List), and will support individuals in their homes with appropriate services.   To the extent available, such services will include, but not be limited to, day habilitation, respite, behavioral supports, supported employment, support coordination, assistive technology and environmental/vehicle modifications.

D.  Upon closure of any Developmental Center, the Commissioner will seek, as one of the Department's top priorities, as part of the annual budget recommendations, that all funds previously allocated in the Appropriations Act to providing services to residents of the affected center be redirected to community-based services provided to former residents of that Developmental Center.

11.   Settlement Monitoring and Implementation

A.  A mutually agreeable consultant shall be hired at DHS expense, at a cost not to exceed twenty-five thousand dollars ($25,000) plus reasonable expenses annually, to advise both parties on the implementation of this Agreement and development of community-based resources.   The Consultant shall be involved in planning for the training and mentoring of professionals employed by DDD and in bringing DDD into alignment with best practices and compliance with the time frames and other requirements in this Agreement.

12

(1)  The consultant shall have ready access to the reports provided pursuant to paragraph 11C below, all documents underlying those reports, all documents related to implementation of the *Olmstead* Plan, and any other information the Consultant considers necessary to perform the Consultant's functions under the Agreement.  The Consultant also shall have ready access to individuals residing in Developmental Centers, with their consent, and to DDD staff and facilities.  The Consultant shall execute a confidentiality agreement with substantially the same provisions as the Confidentiality Orders attached to this Agreement as Exhibit A.

(2)  DRNJ, DDD and the Consultant shall have quarterly conference calls to discuss the status of the Consultant's work.  However, any of such conference calls may be waived by the parties if DRNJ, DDD, and the Consultant all agree that the call is not necessary.

(3)  The Consultant shall keep DRNJ and Defendants apprised of the status of her work.  The Consultant may speak separately with either party or its representatives.  The Consultant shall have the discretion to determine whether information the Consultant learns or discusses in a separate discussion with one party shall be kept confidential from the other.

(4)  No later than July 1, 2016, the Consultant will make recommendations to the Commissioner with respect to the Pre-Admission Review procedure set forth above or any other relevant pre-admission review procedure, and with respect to any new or amended Olmstead plan.  The Consultant shall provide a copy of such recommendations to DRNJ.

13

(5)  The Consultant shall be retained for four years from the date of retainer unless DRNJ and Defendants agree to discontinue use of the Consultant before then or to extend the retainer of the Consultant thereafter.

(6)  In the event it becomes necessary to replace the consultant, the identity of a replacement Consultant shall be jointly agreed to by DRNJ and Defendants as follows:

a.  DRNJ and Defendants shall each submit the name, curriculum vitae, and contact information of at least one proposed Consultant to the other within 15 days of receiving notice of the need for a replacement Consultant.

b.  Each party shall have 30 days from the date of receiving notice of the need for a replacement Consultant to choose a replacement Consultant from those proposed; or, if that has not occurred by the thirtieth day, each party shall submit the name, curriculum vitae, and contact information of at least one other proposed consultant.

c.  If DRNJ and Defendants have not agreed on the identity of the replacement Consultant by 30 days from the date of receiving notice of the need for a new Consultant, DRNJ and Defendants agree to mediate the matter for 15 days. DRNJ and Defendants may extend the 15-day time frame set forth herein by mutual agreement in writing.

B.  Defendants will pay DRNJ eighty-eight thousand dollars ($88,000) per year for each year from FY2013 to FY2017 to cover all costs anticipated by the parties to be incurred by DRNJ pursuant to this Agreement; provided, however, that in the event that more than 20 individuals are admitted to Developmental Centers in any year

14

from FY2013 to FY2016, the amount provided to DRNJ in the next succeeding fiscal year pursuant to this paragraph shall be ninety-four thousand dollars ($94,000).

    C.  DDD shall provide the following reports to DRNJ:

    (1)  The DC Monthly Movement Summary, by the tenth day of each month through June 2017, in the format shown in Exhibit B.

    (2)   An updated Community Placement Eligibility list, in sortable electronic form and in the format shown in Exhibit C, by February 1 and August 1 of each year through 2017.

    (3)  A report on the progress of its development of needed community-based resources, by February 1 and August 1 of each year through 2017, in the format shown in Exhibit D.

12.  General Release of Claims.

    A.  It is expressly understood and agreed by each of the Parties that this Agreement constitutes a complete and final general Release between the Parties with respect to any and all past and present liability, claims, demands, rights and causes of action, guarantees, claims for damages, settlements, costs, attorneys' fees and compensation of any kind or nature whatsoever (whether class, derivative or individual in nature), in connection with or arising out of the Actions.

    B.  In return for the consideration set forth in Paragraphs 5, 6, 7, and 8 and the other promises contained herein, Plaintiffs, and each of them, do knowingly and voluntarily, completely and forever, release and discharge Defendants, and each of them, and each and all of Defendants' present and former employees, officers, agents and representatives, and any successors of Defendants, from any and all claims, causes

of action, judgments, obligations or liabilities of whatever kind and character, whether known or unknown, fixed or contingent, relating in any way to the provision of community-based services to Community Placement-Eligible individuals, and based on any conduct, acts or omissions up to and including the date of this Agreement.  This Release includes but is not limited to any claims that Plaintiffs, or any of them, or anyone on behalf of Plaintiffs, or any of them, may have arising under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504"); the Medicaid Act, 42 U.S.C. § 1396 *et seq.*, the federal or State Constitution, or federal or State statute, regulation, rule, or public policy; any claim of retaliation under such laws or on any other basis; any claim arising under the common law; any claim based in contract, tort, or any other legal theory or right; any claim for compensatory damages, liquidated damages, punitive damages, damages for emotional distress, attorneys' fees and costs, pre- or post-judgment interest, and any other claim, whether cognizable in law or in equity. Plaintiffs, and each of them, further agree and acknowledge that none of them has filed any action or made any allegations against Defendants, or either of them, relating to the provision of community-based services to themselves or any other Community Placement-Eligible individuals, in any matter in any court, agency or tribunal other than the Actions.  Nothing in this Agreement shall be construed to limit DRNJ's pursuit of any action that does not relate in any way to the provision of community-based services to Community Placement-Eligible individuals, or to limit DRNJ's pursuit of any action currently pending against Defendants, or either of them, other than the Actions.

13. <u>Confidentiality</u>. The information in all reports required by Paragraph 11 shall be treated as confidential to the extent that it comes within the terms of the Confidentiality Orders entered in the Actions, copies of which are attached to this Agreement as Exhibit A.

14. <u>Remedies for Breach.</u>

A. <u>Motion</u>. In the event any Party asserts that another has breached any provision of this Agreement, the asserting Party may invoke the Dispute Resolution Process set forth in Paragraph 15; provided, however, that any failure to obtain approval by the Governor or appropriation by the State Legislature of amounts sufficient to meet the targets and timeframes in paragraph 5 above shall not be considered a breach, and no remedy for such occurrence shall be required or provided; and provided, further, that in the event of issuance of a court order or action by the State Legislature prohibiting or delaying the closure of one or more Developmental Centers, any failure to meet the targets and timeframes in paragraph 5 above shall not be considered a breach, and no remedy for such occurrence shall be required or provided. If, in circumstances where it is applicable, the Dispute Resolution Process set forth in Paragraph 15 does not resolve the dispute and after providing 14 days written notice to opposing counsel, the party asserting breach shall file, within 45 days of the written notice of intent to file the motion, a motion to enforce the Agreement, before the United States District Court for the District of New Jersey.

B. <u>Defenses</u>. Nothing in this Agreement shall be construed to limit the Defendants' defenses in the event of a motion by Plaintiffs to enforce the Agreement. Specifically, Defendants may raise insufficient appropriations or the existence of a

court order or legislation prohibiting or delaying closure of one or more Developmental Centers as a defense to any such motion.

15. Dispute Resolution. The following shall be the Dispute Resolution Process:

A. Notice. Either party may invoke the Dispute Resolution Process in accordance with the terms of this Agreement by sending a written notice to the other party stating the factual basis of the dispute, citing the portion of this Agreement that authorizes the party to invoke the Dispute Resolution Process, and including information supporting the assertion. The other party shall make a written response that includes information supporting its assertions within ten business days of receipt of the invoking party's notice and supporting information.

B. Attempt to Resolve Dispute. From the date of receipt of the written response and supporting information, the Parties shall negotiate in good faith for 30 business days in an attempt to resolve the dispute unless the time is extended by written agreement of the Parties.

C. Mediation. If the Parties do not resolve the dispute through negotiations within 30 business days, the Parties shall agree to mediate the matter for 30 days on terms to be agreed upon and placed in writing by the Parties. The Parties, by mutual agreement in writing, may extend the 30-day mediation time frame.

D. Proposed Mediators. Within 14 days of any unsuccessful conclusion of negotiations, each Party shall propose the name of a candidate to serve as the Mediator. Each party shall have 14 days thereafter to respond to the other party's proposal. Thereafter, the Parties shall have 30 days to reach an agreement as to the identity of the Mediator.

18

   E. Confidentiality. The Mediator shall execute a confidentiality agreement with the same provisions as required in the confidentiality orders in Paragraph 13.

   F. Costs of Mediation. Defendants shall pay all costs of the mediation.

16. Attorneys' Fees and Costs. Defendants shall pay DRNJ seven hundred thousand dollars ($700,00.00) in full satisfaction of all attorneys' fees and costs that Plaintiffs have incurred in the Actions.

17. Notices. All notices and reports to be sent pursuant to this Agreement shall be sent by U.S. Mail, return receipt requested or by hand delivery with a signed confirmation,

to:     For Plaintiffs:

        Executive Director
        Disability Rights New Jersey,
        or its successor
        210 South Broad Street, 3rd Floor
        Trenton, New Jersey  08608

        Director of Litigation
        Disability Rights New Jersey,
        or its successor
        210 South Broad Street, 3rd Floor
        Trenton, NJ 08625-0727

        For Defendants:

        Commissioner
        New Jersey Department
        of Human Services
        PO Box 700
        Trenton, New Jersey
        08625-0700

        Assistant Commissioner
        N.J. Div. of Developmental Disabilities
        P.O. Box 727
        Trenton, New Jersey  08608

        HHS Section Chief
        Division of Law
        N. J. Dept. of Law and Public Safety
        P.O. Box 112  Trenton, NJ 08625

18. Compliance with Applicable Law. Defendants at all times shall remain bound to comply with applicable New Jersey and federal law.

19. Court-ordered Admissions.  Nothing in this Agreement shall be interpreted to refer to, to have any effect on, or to limit court-ordered admissions to developmental centers.

20. Binding Agreement.  This Agreement is enforceable only by and is binding upon the Parties, by and through their officials, agents, employees, and   successors.     The

19

Parties do not intend that this Agreement shall create a private right of action in any civil, criminal or administrative action in any person. Nothing in this Agreement is intended to divest any person(s) of any other private right of action they may possess pursuant to State or federal law. No other person or entity is intended to be a third-party beneficiary of the provisions of this Agreement for purposes of any civil, criminal, or administrative action, and accordingly, no person or entity other than the Parties may assert any claim or right as a beneficiary or protected class under this Agreement in any civil, criminal, or administrative action.

21. <u>Modification of Agreement</u>. This Agreement may not be altered, amended, or modified except by a writing duly executed by all of the undersigned Parties or their successors in interest.

22. <u>Termination</u>. The Agreement shall automatically terminate on June 30, 2017, without the need for any action on behalf of any party.

23. <u>Entire Agreement</u>. This Agreement supersedes any previous agreements, oral or written, between the Parties and shall constitute the entire, integrated Agreement of the Parties. No prior contemporaneous communications, oral or written, or prior drafts shall be relevant or admissible for purposes of determining the meaning of any provisions herein in any litigation or any other proceeding.

24.  <u>Counterparts</u>.  This Agreement may be executed and delivered in several counterparts, each of which when so executed and delivered shall constitute an original, fully enforceable counterpart for all purposes.

By their signatures, each Party signing this Agreement represents and warrants that the signatory is authorized to execute this Agreement.

For Plaintiff DRNJ:

_____
Joseph Young
Executive Director
Disability Rights New Jersey, Inc.

November 27, 2012
_____
Date

ALLISON HARMON

By: _____
Valerie Harmon, Guardian

_____
Date

_____
FREDRENA THOMPSON

_____
Date

_____
REGINALD BROWN

_____
Date

_____
JONATHAN STEVENS

_____
Date

For Defendants:

_____
JENNIFER VELEZ
Commissioner
New Jersey Department of Human Services

2 26.13
_____
Date

21

24.   Counterparts.   This Agreement may be executed and delivered in several counterparts, each of which when so executed and delivered shall constitute an original, fully enforceable counterpart for all purposes.

By their signatures, each Party signing this Agreement represents and warrants that the signatory is authorized to execute this Agreement.

For Plaintiff DRNJ:

_____
Joseph Young
Executive Director
Disability Rights New Jersey, Inc.

_____
Date

ALLISON HARMON

By: _Valerie J. H_____     _Dec 5, 2012_____
     Valerie Harmon, Guardian                Date

_____     _____
FREDRENA THOMPSON                         Date

_____     _____
REGINALD BROWN                            Date

_____     _____
JONATHAN STEVENS                          Date

For Defendants:

_____     _2.26.13_____
JENNIFER VELEZ                            Date
Commissioner
New Jersey Department of Human Services

21

24.   <u>Counterparts</u>.   This Agreement may be executed and delivered in several counterparts, each of which when so executed and delivered shall constitute an original, fully enforceable counterpart for all purposes.

By their signatures, each Party signing this Agreement represents and warrants that the signatory is authorized to execute this Agreement.

For Plaintiff DRNJ:

_____

Joseph Young
Executive Director
Disability Rights New Jersey, Inc.

_____

Date

ALLISON HARMON

By: _____
     Valerie Harmon, Guardian          _____
                                        Date

_~Fredrena Thompson~_____    _12/12/12_____
FREDRENA THOMPSON                       Date

_____        _____
REGINALD BROWN                          Date

_____        _____
JONATHAN STEVENS                        Date

For Defendants:

_____        _2-26-13_____
JENNIFER VELEZ                          Date
Commissioner
New Jersey Department of Human Services

21

24.   <u>Counterparts</u>.   This  Agreement  may  be  executed  and  delivered  in  several counterparts, each of which when so executed and delivered shall constitute an original, fully enforceable counterpart for all purposes.

By their signatures, each Party signing this Agreement represents and warrants that the signatory is authorized to execute this Agreement.

For Plaintiff DRNJ:

_____

Joseph Young
Executive Director
Disability Rights New Jersey, Inc.

_____

Date

ALLISON HARMON

By: _____
      Valerie Harmon, Guardian       Date _____

FREDRENA THOMPSON          Date _____

*Reggie Brown*
REGINALD BROWN          Date 12/5/2012 _____

JONATHAN STEVENS          Date _____

For Defendants:

_____          2 26.13 _____
JENNIFER VELEZ                 Date
Commissioner
New Jersey Department of Human Services

24.   <u>Counterparts</u>.   This Agreement may be executed and delivered in several counterparts, each of which when so executed and delivered shall constitute an original, fully enforceable counterpart for all purposes.

By their signatures, each Party signing this Agreement represents and warrants that the signatory is authorized to execute this Agreement.

For Plaintiff DRNJ:

_____
Joseph Young
Executive Director
Disability Rights New Jersey, Inc.

_____
Date

ALLISON HARMON

By: _____          _____
     Valerie Harmon, Guardian            Date

_____          _____
FREDRENA THOMPSON                        Date

_____          _____
REGINALD BROWN                           Date

_____          _____
JONATHAN STEVENS                         Date

For Defendants:

_____          2.26.13
JENNIFER VELEZ                           Date
Commissioner
New Jersey Department of Human Services

21

# EXHIBIT A

ZULIMA V. FARBER
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, New Jersey 08625
Attorney for Kevin M. Ryan,
        Commissioner, New Jersey
        Department of Human Services

By:  Beth Leigh Mitchell (BLM 0651)
     Deputy Attorney General
     (609) 633-8197

     Amy E. Duff (AD8157)
     Deputy Attorney General
     (609) 341-5972

     Jennifer J. Dugan (JD6683)
     Deputy Attorney General
     (609) 292-6120

RECEIVED

MAY 2 5 2006

AT 8:30 _____ M
WILLIAM T. WALSH
CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
VICINAGE OF TRENTON

| | |
|---|---|
| NEW JERSEY PROTECTION AND ADVOCACY, INC.; ALLISON HARMON, by and through her guardians, Valerie Harmon and Linda Lemore, and FREDRENA THOMPSON,<br><br>        Plaintiffs<br><br>        v.<br><br>JAMES DAVY, in his official capacity as Commissioner of Human Services for the State of New Jersey,<br><br>        Defendants | Hon. Stanley R. Chesler, U.S.D.J.<br><br>    Civil Action No:<br>    05-CV-4723 (SRC)<br><br><br>DISCOVERY CONFIDENTIALITY AND PROTECTIVE ORDER |

WHEREAS this matter is a contested matter filed in the

United States District Court for the District of New Jersey

and venued in the Vicinage of Trenton; and

WHEREAS, the State of New Jersey, Department of Human

with the HIPAA Privacy Rules generally, and specifically 45 C.F.R. 164.512(e), which provides that protected health information may be provided in a judicial proceeding where a qualified protective order has been entered into; and

WHEREAS, it is anticipated that during the course of the above-captioned matter the State may have to disclose records which may contain protected health information within the meaning of HIPAA Privacy Rule; and

WHEREAS, it is anticipated that the State may have to disclose records in the custody of Department of Human Services which may contain confidential information pursuant to N.J.S.A. 30:4-24.3, which can only be disclosed where a court has ordered same pursuant to N.J.S.A. 30:4-24.3 (c) and the Court having found that non-disclosure of records that the State will produce pursuant to discovery in this litigation would be contrary to the public interest; and

WHEREAS, it is anticipated that New Jersey Protection and Advocacy, Inc. ("NJP&A") may have to disclose records that contain sensitive and confidential information including but not limited to medical conditions/treatment of NJP&A's constituents and/or records that are protected from disclosure under 42 U.S.C. §15041.

WHEREAS, it is anticipated that third parties may have to disclose records that contain protected health information within the meaning of the HIPAA Privacy Rules,

or other sensitive and confidential information that may be confidential pursuant to other statutes, regulations or case law, including but not limited to medical conditions/treatment; and

WHEREAS, the parties consent and agree to the terms, form and entry of this Discovery Confidentiality and Protective Order ("Order") on the following terms and for good cause shown;

IT IS, therefore, on this 25th day of May , 2006, ORDERED that:

1.   All confidential material set forth above and produced subject to the terms of this Order shall be termed "Confidential Material."  The designation of Confidential Material may be made by the producing party by conspicuously stamping or otherwise placing or affixing on documents produced that are (or contain or refer to) Confidential Material the words "Confidential."

2.   The parties shall not further reproduce, copy or otherwise disseminate Confidential Material to any person or agency for any other reason, nor disseminate or make public the records by any means, direct or indirect, other than to the aforesaid attorney, or the court having jurisdiction of the action except as specified in this Order; and

3.   All Confidential Material released to the parties as part of discovery pursuant to this Order:

a.  shall be kept strictly confidential pursuant
to HIPAA Privacy Rule and shall not be used
or disclosed for any purpose other than the
trial preparation in the above-captioned
matter, as specified in this Order, for which
this information was requested as required by
HIPAA Privacy Rule and specifically 45 C.F.R.
§164.512 (e) (1) (v) (A); and;

b.  may not be disclosed to any other persons
except for the parties, the attorneys of
record for the parties and members of their
law firms/organizations, or to persons
regularly employed in such law
firms/organizations' offices, or in
accordance with the limitations set forth in
paragraph 4, to certain other persons as
reasonably necessary for the preparation or
trial of this matter.

4.  In addition to those persons listed in paragraph 3
(b), the following persons may be given access to
Confidential Material when reasonably necessary for the
conduct of this litigation:

a.  Expert witnesses and consulting experts.

b.  Court reporters involved in taking
depositions in this case.

    c.    Non-party witnesses, but only in the course
of, and to the extent necessary to conduct,
depositions or interviews of such witnesses.

    d.    Persons who were authors of the Confidential
Material, or who were previous recipients of
the Confidential Material.

    e.    Such other persons as may be identified in
the course of the litigation and as agreed
between counsel for the parties.

5.    Any such person to whom Confidential Material is
to be disclosed pursuant to this Order shall first be
advised by the attorney making the disclosure that pursuant
to this Order such person may not divulge any such
Confidential Material to any other person not authorized
hereunder to have access to such Confidential Material, and
may not use such Confidential Material for purposes
unrelated to this litigation and the reason for the
disclosure in the course thereof.  The attorney shall secure
from each person an affidavit stating that such person has
read this Order and agrees to be bound by it.  Such
affidavit shall be maintained in the possession of the
attorney securing the affidavit until further order of the
Court.  Court reporters and deposition witnesses may satisfy
this requirement by noting their agreement on the record.

6.    No later than sixty (60) days after the conclusion

of this litigation (including exhaustion of all appeals and/or petitions for certiorari), all Confidential Material provided by the State pursuant to this Order, including all copies made for any reason, shall either be returned to Zulima V. Farber, Attorney General of New Jersey, through Beth Leigh Mitchell, Deputy Attorney General, or certified to have been destroyed at the completion of this legal proceeding as required by the HIPAA Privacy Rule, 45 C.F.R. §164.512(e) (1) (v) (B) .

7.   No later than sixty (60) days after the conclusion of this litigation (including exhaustion of all appeals and/or petitions for certiorari), all Confidential Material provided by NJP&A pursuant to this Order, including all copies made for any reason, shall either be returned to NJP&A or Ballard Spahr Andrews & Ingersoll, LLP, or certified to have been destroyed at the completion of this legal proceeding.

8.   To the extent that any of the Confidential Material is to be used as evidence in the above captioned matter, the party introducing such Confidential Material shall file a motion to seal pursuant to L. Civ. R. 5.3 (c).

9.   In the event that a good faith dispute arises regarding whether information is properly designated as Confidential Material, such that is subject to the terms of the Order, the party disputing the assertion of

confidentiality shall provide the producing party with a
written statement setting forth the basis upon which the
challenge to the assertion of confidentiality is based.
Within fifteen (15) business days of receipt of such written
statement, the producing party shall either:

      a.    withdraw the assertion of confidentiality; or

      b.    file a motion seeking to have the Court
          determine whether the information is
          confidential pursuant to the claimed
          authority.  In any such motion the producing
          party shall have the burden to prove that
          such information is confidential.

10.  In the event that a good faith dispute arises
regarding whether an individual identified pursuant to
paragraph 4(e) of this Order shall be required to keep the
Confidential Material confidential pursuant to this Order,
the party challenging the need for the individual to abide
by this Order shall provide the other party with a written
statement of the basis upon which it is believed that the
identified individual need abide by this Order.  Within
fifteen (15) business days, the party asserting that the
identified individual must keep the information confidential
shall either:

      a.    withdraw the request to identify the
          individual as someone who must keep the

Confidential Material confidential under the
terms of this Order; or

b.   file a motion seeking to have the Court
determine whether the individual is someone
who must keep the Confidential Material
confidential pursuant to the terms of this
Order.   In any such motion the party
asserting that the individual must



abide by the terms of this Order shall

have the burden to so prove.

Hon. Tonianne Bongiovanni,
U.S.M.J

We, the undersigned, hereby
consent and agree to the terms,
form and entry of this Order:

/s Eugene J. Kuzinski                        May 24, 2006
                                             Date
John B. Kearney, Esq.
Eugene J. Kuzinski, Esq.
Ballard Spahr Andrews & Ingersoll
LLP

                                             May 24, 2006
                                             Date

/s Emmett Dwyer
Emmett Dwyer, Esq.
New Jersey Protection and Advocacy

Attorneys for Plaintiffs, New Jersey
Protection and Advocacy, a New
Jersey non-profit corporation;
Allison Harmon, by and through her
guardians, Valerie Harmon and Linda
Lemore; and Fredrena Thompson.


        ZULIMA V. FARBER
        ATTORNEY GENERAL OF NEW JERSEY


By:     /s Beth Leigh Mitchell               May 24, 2006
        Beth Leigh Mitchell, Esq.            Date
        Deputy Attorney General
        on behalf of Kevin Ryan,
        Commissioner, New Jersey
        Department of Human Services

ANNE MILGRAM
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, NJ 08625
Attorney for Jennifer Velez,
    Commissioner, New Jersey
    Department of Human Services

By:  Stephanie Beaty
    Deputy Attorney General
    (609) 292-8555

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
VICINAGE OF TRENTON

| | |
|---|---|
| NEW JERSEY PROTECTION AND ADVOCACY, Inc., | ) ) ) Hon. Ann E. Thompson U.S.D.J. ) |
| Plaintiff, | ) Civil Action No. 08-1858(AET) ) |
| v. | ) ) |
| JENNIFER VELEZ, In her official Capacity as Commissioner of Human Services for the State of New Jersey, | ) **DISCOVERY CONFIDENTIALITY AND** ) **PROTECTIVE ORDER** ) ) ) |
| Defendant. | ) ) |

    WHEREAS this matter is a contested matter filed in the United States District Court for the District of New Jersey and venued in the Vicinage of Trenton; and

    WHEREAS, it is anticipated that The State of New Jersey, Department of Human Services (hereinafter "the State") may have to disclose records which may contain protected health information within the meaning of the Health Insurance Portability and Accountability Act, Administrative Simplification, 42 U.S.C.A.

Case 3:08-cv-01858-AET-LHG   Document 90   Filed 03/04/13   Page 39 of 53 PageID: 808

Case 3:08-cv-01858-AET-LHG   Document 46   Filed 12/03/09   Page 2 of 8 PageID: 599
Case 3:08-cv-01858-AET-LHG   Document 42-2   Filed 11/02/2009   Page 2 of 8

§1320d et seq., and its underlying regulations, 45 C.F.R. 160 and 164 (HIPAA Privacy Rule), generally, and specifically 45 C.F.R. 164.512(e), which provides that protected health information may be provided in a judicial proceeding where a protective order has been entered into; and

WHEREAS, it is anticipated that the State may have to disclose records in the custody of Department of Human Services, Division of Developmental Disabilities, which may contain confidential information pursuant to N.J.S.A. 30:4-24.3, which can only be disclosed where a court has ordered same pursuant to N.J.S.A. 30:4-24.3(c) and the Court having found that non-disclosure of records that the State will produce pursuant to discovery in this litigation would be contrary to the public interest; and

WHEREAS, it is anticipated that New Jersey Protection and Advocacy, Inc. ("NJP&A") (now known as Disability Rights New Jersey, Inc.) may have to disclose records that contain sensitive and confidential information including but not limited to medical conditions/treatment of NJP&A's constituents and/or records that are protected from disclosure under 42 U.S.C. §10806.

WHEREAS, it is anticipated that third parties may have to disclose records that contain sensitive and confidential information including but not limited to medical conditions/treatment; and

Case 3:08-cv-01858-AET-LHG   Document 90   Filed 03/04/13   Page 40 of 53 PageID: 809

Case 3:08-cv-01858-AET-LHG   Document 46   Filed 12/03/09   Page 3 of 8 PageID: 600
Case 3:08-cv-01858-AET-LHG   Document 42-2   Filed 11/02/2009   Page 3 of 8

WHEREAS, the parties consent and agree to the terms, form and entry of this Discovery Confidentiality and Protective Order ("Order") on the following terms and for good cause shown;

IT IS, therefore, on this 2nd day of ~~October~~ December, 2009, ORDERED that:

1.   All confidential material set forth above and produced subject to the terms of this Order shall be termed "Confidential Material." The designation of Confidential Material may be made by the producing party by conspicuously stamping or otherwise placing or affixing on documents produced that are (or contain or refer to) Confidential Material the words "Confidential."

2.   The parties shall not further reproduce, copy or otherwise disseminate Confidential Material to any person or agency for any other reason, nor disseminate or make public the records by any means, direct or indirect, other than to the aforesaid attorney, or the court having jurisdiction of the action except as specified in this Order; and

3.   All Confidential Material released to the parties as part of discovery pursuant to this Order:

a.   shall be kept strictly confidential pursuant to HIPAA Privacy Rule and shall not be used or disclosed for any purpose other than the trial preparation in the above-captioned matter, as specified in this Order, for

3

Case 3:08-cv-01858-AET-LHG   Document 90   Filed 03/04/13   Page 41 of 53 PageID: 810

Case 3:08-cv-01858-AET-LHG   Document 46   Filed 12/03/09   Page 4 of 8 PageID: 601
Case 3:08-cv-01858-AET-LHG     Document 42-2     Filed 11/02/2009     Page 4 of 8

which this information was requested as required by HIPAA Privacy Rule and specifically 45 C.F.R. §164.512(e)(1)(v)(A); and

b.   may not be disclosed to any other persons except for the parties, the attorneys of record for the parties and members of their law firms/organizations, or to persons regularly employed in such law firms/organizations' offices, or in accordance with the limitations set forth in paragraph 5, to certain other persons as reasonably necessary for the preparation or trial of this matter.

5.   In addition to those persons listed in paragraph 4, the following persons may be given access to Confidential Material when reasonably necessary for the conduct of this litigation:

a.   Expert witnesses and consulting experts.

b.   Court reporters involved in taking depositions in this case.

c.   Non-party witnesses, but only in the course of, and to the extent necessary to conduct, depositions or interviews of such witnesses.

d.   Persons who were authors of the Confidential Material, or who were previous recipients of the Confidential Material.

e.   Such other persons as may be identified in the course of the litigation and as agreed between counsel

4

Case 3:08-cv-01858-AET-LHG   Document 90   Filed 03/04/13   Page 42 of 53 PageID: 811

Case 3:08-cv-01858-AET-LHG   Document 46   Filed 12/03/09   Page 5 of 8 PageID: 602
Case 3:08-cv-01858-AET-LHG   Document 42-2   Filed 11/02/2009   Page 5 of 8

for the parties.

6.   Any such person to whom Confidential Material is to be disclosed pursuant to this Order shall first be advised by the attorney making the disclosure that pursuant to this Order such person may not divulge any such Confidential Material to any other person not authorized hereunder to have access to such Confidential Material, and may not use such Confidential Material for purposes unrelated to this litigation and the reason for the disclosure in the course thereof. The attorney shall secure from each person an affidavit stating that such person has read this Order and agrees to be bound by it. Such affidavit shall be maintained in the possession of the attorney securing the affidavit until further order of the Court. Court reporters and deposition witnesses may satisfy this requirement by noting their agreement on the record;

7.   No later than sixty (60) days after the conclusion of this litigation (including exhaustion of all appeals and/or petitions for certiorari), all Confidential Material provided by the State pursuant to this Order, including all copies made for any reason, shall either be returned to Anne Milgram, Attorney General of New Jersey, Stephanie Beaty, Deputy Attorney General, or certified to have been destroyed at the completion of this legal proceeding as required by the HIPAA Privacy Rule, 45 C.F.R. §164.512(e)(1)(v)(B).

8.   No later than sixty (60) days after the conclusion

Case 3:08-cv-01858-AET-LHG   Document 90   Filed 03/04/13   Page 43 of 53 PageID: 812

Case 3:08-cv-01858-AET-LHG   Document 46   Filed 12/03/09   Page 6 of 8 PageID: 603
Case 3:08-cv-01858-AET-LHG   Document 42-2   Filed 11/02/2009   Page 6 of 8

of this litigation (including exhaustion of all appeals and/or petitions for certiorari), all Confidential Material provided by NJP&A pursuant to this Order, including all copies made for any reason, shall either be returned to NJP&A or Bernard Cooney, Esq., or certified to have been destroyed at the completion of this legal proceeding.

9.   To the extent that any of the Confidential Material is to be used as evidence in the above captioned matter, the party introducing such Confidential Material shall file a motion to seal pursuant to L. Civ. R. 5.3(c).

10.  In the event that a good faith dispute arises regarding whether information is properly designated as Confidential Material, such that is subject to the terms of the Order, the party disputing the assertion of confidentiality shall provide the producing party with a written statement setting forth the basis upon which the challenge to the assertion of confidentiality is based. Within fifteen (15) business days of receipt of such written statement, the producing party shall either:

   a.   withdraw the assertion of confidentiality; or

   b.   file a motion seeking to have the Court determine whether the information is confidential pursuant to the claimed authority. In any such motion the producing party shall have the burden to prove that such information is confidential.

Case 3:08-cv-01858-AET-LHG   Document 90   Filed 03/04/13   Page 44 of 53 PageID: 813

Case 3:08-cv-01858-AET-LHG   Document 46   Filed 12/03/09   Page 7 of 8 PageID: 604
Case 3:08-cv-01858-AET-LHG   Document 42-2   Filed 11/02/2009   Page 7 of 8

11. In the event that a good faith dispute arises regarding whether an individual identified pursuant to paragraph 5(e) of this Order shall be required to keep the Confidential Material confidential pursuant to this Order, the party challenging the need for the individual to abide by this Order shall provide the other party with a written statement of the basis upon which it is believed that the identified individual need abide by this Order. Within fifteen (15) business days, the party asserting that the identified individual must keep the information confidential shall either:

a.   withdraw the request to identify the individual as someone who must keep the Confidential Material confidential under the terms of this Order; or

b.   file a motion seeking to have the Court determine whether an individual is someone who must keep the Confidential Material confidential pursuant to the terms of this Order. In any such motion the party asserting that the individual must abide by the terms of this order shall have the burden to so prove.

Hon. Lois H. Goodman, U.S.M.J.

Case 3:08-cv-01858-AET-LHG   Document 90   Filed 03/04/13   Page 45 of 53 PageID: 814

Case 3:08-cv-01858-AET-LHG   Document 46   Filed 12/03/09   Page 8 of 8 PageID: 605
Case 3:08-cv-01858-AET-LHG      Document 42-2      Filed 11/02/2009      Page 8 of 8

We, the undersigned, hereby
consent and agree to the terms,
form and entry of this Order:

Lowenstein Sandler, P.C.

_____        10/30/09
Bernard Cooney, Esq.                    _____
on behalf of Plaintiff, New Jersey     Date
Protection and Advocacy, Inc.
(now known as Disability Rights
New Jersey, Inc.)

ANNE MILGRAM
ATTORNEY GENERAL OF NEW JERSEY

_____        10/29/09
Stephanie Beaty                        _____
Deputy Attorney General                Date
on behalf of Jennifer Velez,
Commissioner, New Jersey
Department of Human Services

8

# EXHIBIT B

## Developmental Center Movement - FY 2011

| | July | August | September | October | November | December | January | February | March | April | May | June | Year Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Starting Census | 2,703 | 2,702 | 2,694 | 2,685 | 2,676 | 2,666 | 2,659 | 2,648 | 2,640 | 2,621 | 2,606 | 2,597 | 2,703 |
| From DC | 1 | 0 | 0 | 0 | 5 | 3 | 1 | 20 | 8 | 5 | 1 | 4 | 48 |
| To DC | -1 | 0 | 0 | 0 | -5 | -3 | -1 | -20 | -8 | -5 | -1 | -4 | -48 |
| From Comm | 6 | 3 | 5 | 1 | 3 | 3 | 0 | 6 | 3 | 3 | 2 | 1 | 36 |
| To Comm | -4 | -4 | -4 | -3 | -12 | -5 | -8 | -7 | -14 | -15 | -8 | -9 | -93 |
| Deaths | -3 | -7 | -10 | -7 | -1 | -5 | -3 | -4 | -8 | -3 | -3 | -2 | -56 |
| Discharges | 0 | 0 | 0 | 0 | 0 | 0 | 0 | -3 | 0 | 0 | 0 | 0 | -3 |
| Change(+/-) | -1 | -8 | -9 | -9 | -10 | -7 | -11 | -8 | -19 | -15 | -9 | -10 | -116 |
| Ending Census | 2,702 | 2,694 | 2,685 | 2,676 | 2,666 | 2,659 | 2,648 | 2,640 | 2,621 | 2,606 | 2,597 | 2,587 | 2,587 |

"From Comm" Breakout by Residence Type the Person Came From

| | July | August | September | October | November | December | January | February | March | April | May | June | Year Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Own Home | 3 | 0 | 4 | 0 | 0 | 1 | 0 | 4 | 1 | 2 | 1 | 0 | 16 |
| Group Home | 1 | 2 | 0 | 0 | 1 | 2 | 0 | 1 | 1 | 0 | 1 | 0 | 9 |
| Supv Apt | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 2 |
| Skill Dev | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Psy Hsptl | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 2 |
| Correct Facil | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 3 |
| Board Home | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| POC | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Skill Nurs Fac | 0 | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | 0 | 1 | 4 |
| Total | 6 | 3 | 5 | 1 | 3 | 3 | 0 | 6 | 3 | 3 | 2 | 2 | 37 |

"From Comm" Breakout by Region the Person Came From

| | July | August | September | October | November | December | January | February | March | April | May | June | Year Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Northern | 2 | 1 | 0 | 0 | 1 | 1 | 0 | 3 | 1 | 1 | 1 | 0 | 11 |
| Upper Central | 2 | 1 | 1 | 0 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 7 |
| Lower Central | 0 | 1 | 1 | 1 | 1 | 1 | 0 | 3 | 0 | 1 | 1 | 0 | 10 |
| Southern | 2 | 0 | 3 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | 7 |
| Total | 6 | 3 | 5 | 1 | 3 | 3 | 0 | 6 | 3 | 2 | 2 | 1 | 35 |

## Developmental Center Movement - FY 2011

| "To Comm" Breakout | July | August | September | October | November | December | January | February | March | April | May | June | Year Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Olm. Comm. | 3 | 3 | 3 | 3 | 8 | 3 | 7 | 6 | 13 | 14 | 6 | 7 | 76 |
| Non.Olm. Comm. | 1 | 1 | 0 | 0 | 3 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 7 |
| Skill Nurs Fac | 0 | 0 | 1 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 1 | 0 | 4 |
| Correct Facil | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 2 |
| Psych Hsptl | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 2 |
| Total | 4 | 4 | 4 | 3 | 12 | 5 | 8 | 7 | 14 | 14 | 7 | 9 | 91 |

# EXHIBIT C

| DC Individuals Eligible for Community Placement | | | |
|---|---|---|---|
| Effective May 1, 2012 | | | |
| DC | DDDID | ConsumerName | Guardianship Status |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

## DC IndividualsNot Eligible for Community Placement

### Effective May 1, 2012

| DC | DDDID | ConsumerName | IDT in Favor of/Not Opposed | Individual In Favor of/Not opposed | Family in Favor of/Not Opposed | Guardian in Favor of/Not Opposed | Guardianship Status |
|----|-------|--------------|------------------------------|-------------------------------------|---------------------------------|-----------------------------------|----------------------|
|    |       |              |                              |                                     |                                 |                                   |                      |
|    |       |              |                              |                                     |                                 |                                   |                      |
|    |       |              |                              |                                     |                                 |                                   |                      |
|    |       |              |                              |                                     |                                 |                                   |                      |
|    |       |              |                              |                                     |                                 |                                   |                      |
|    |       |              |                              |                                     |                                 |                                   |                      |
|    |       |              |                              |                                     |                                 |                                   |                      |
|    |       |              |                              |                                     |                                 |                                   |                      |
|    |       |              |                              |                                     |                                 |                                   |                      |
|    |       |              |                              |                                     |                                 |                                   |                      |
|    |       |              |                              |                                     |                                 |                                   |                      |

# EXHIBIT D

NJ Department of Human Services
Division of Developmental Disabilities

| Row Labels | Units | FY Cost | Annual Cost |
|---|---|---|---|
| FY12 10-26-2012 | 1,034 | 64,775,342 | 79,746,432 |
| Age Outs | 178 | 5,327,210 | 6,711,281 |
| Day Program | 156 | 3,224,212 | 4,257,370 |
| Residential Placement | 22 | 2,102,998 | 2,453,911 |
| CSWL | 13 | 671,801 | 988,774 |
| Day Program | 3 | 81,749 | 79,239 |
| Residential Placement | 10 | 590,053 | 909,535 |
| Emergencies | 670 | 47,487,422 | 55,759,584 |
| CPEP | 50 | 4,121,717 | 7,638,901 |
| Day Program | 199 | 2,799,609 | 5,217,147 |
| DC Discharge | - | - | - |
| MH CEPP | 5 | 313,919 | 968,921 |
| Miscellaneous | - | 7,897,405 | 14,080,850 |
| Residential Placement | 175 | 18,086,199 | 24,128,177 |
| Staffing | - | 7,591,483 | 3,725,588 |
| Vehicles (Non-Start Up) | 241 | 6,677,090 | - |
| Olmstead | 114 | 7,356,650 | 12,184,498 |
| All Inclusive | 16 | 512,648 | 2,519,996 |
| Day Program | 32 | 542,674 | 896,524 |
| Residential Placement | 66 | 6,301,329 | 8,767,978 |
| Other | 50 | 3,068,887 | 3,136,826 |
| Capital | 8 | 90,700 | - |
| Cognizant-DYFS/DMHS | 7 | 423,547 | 758,174 |
| ECS Expansion | - | 79,554 | |
| Family Support | 5 | (1,125,171) | (1,380,757) |
| Major Maintenance | - | 62,995 | - |
| Real Life Choices/Self Directed | - | 22,500 | |
| To Be Determined | 30 | 2,542,198 | 3,759,409 |
| Wrap Around | - | 972,564 | - |
| Return NJ | 9 | 863,372 | 965,469 |
| Day Program | 7 | 159,614 | 204,228 |
| Residential Placement | 2 | 703,758 | 761,241 |

*Notes*

*1) Units reflect new contract slots, not consumers (e.g., 1:1 staffing or enhanced vacancy only impacts the cost).*

*2) Units and costs include only cost reimbursement and fixed rate contracts paid directly by the division (e.g., excludes certain day only and nearly all CSWL as these are paid through the fiscal intermediary).*
*3) Capital and major maintenance do not include amounts paid by voucher.*

*4) Categories reflect the net change to all impacted contracts (e.g., RHNJ consumer moving in-state may have a deduction from the out-of-state contract and an addition to the in-state).*
*5) Negative amounts generally reflect transfers between programs, or transfers out of contract (e.g., to fee-for-service voucher payment), not a reduction in services.*